Rodney **NEWKIRK**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 54A04–0712–CR–721.

Court of Appeals of Indiana.

Dec. 31, 2008.

John Pinnow, Greenwood, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Stephen Tesmer, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Rodney Newkirk appeals his sentence for three counts of Class B felony operating a vehicle with a controlled substance in the blood causing death [1] and two counts of Class D felony operating a vehicle with a controlled substance in the blood causing serious bodily injury.[2] We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 1, 2006, Newkirk was driving west on State Road 234 and veered into a group of seven motorcycles in the eastbound lane. Michael Farrell, who was on the first motorcycle, went "full throttle" to get out of Newkirk's way, but they "still only missed by inches." (Tr. at 63.) Newkirk collided with Mike Bird, who was on the second motorcycle. Bird's leg was torn off, and he died later that night. Newkirk also hit Dr. Bob Brooksby and Maria Shipley, who were on the third motorcycle. Brooksby and Shipley were mangled beneath Newkirk's engine and died at the scene. Bill and Donna Belcher, who were riding the fourth motorcycle, were also hit. Bill survived after undergoing emergency surgery to remove blood clots and has permanent scars from the accident. Donna's foot was amputated and she now walks with a limp.

Farrell testified Newkirk was staring straight forward with a blank look as he crashed into the motorcyclists. Newkirk did not offer any assistance to the victims and called his father instead of calling for medical help. Newkirk told an emergency room physician that he might have drugs in his system. A toxicology report indicated Newkirk had methamphetamine in his system.

Newkirk was charged with three counts of Class B felony operating with a controlled substance in the blood causing death; three counts of Class C felony operating while intoxicated causing death; three counts of Class C felony reckless homicide; and two counts of Class D felony operating with a controlled substance in the blood causing serious bodily injury.

On November 10, 2006, while Newkirk was out on bond, he was charged with five new offenses: Class D felony possession of methamphetamine, Class A misdemeanor operating while intoxicated, Class A misdemeanor possession of paraphernalia, Class C misdemeanor operating with a controlled substance in the body, and Class A infraction driving while suspended.

On November 15, 2007, Newkirk pled guilty to three counts of operating with a controlled substance in the blood causing death and two counts of operating with a controlled substance in the blood causing serious bodily injury.[3] The plea agreement included the following: "SENTENCING LEFT TO THE SOLE DISCRETION OF THE COURT, WITH THE PARTIES AGREEING TO AN INITIAL EXECUTED JAIL COMMITMENT OF

---

1. Ind.Code § 9–30–5–5(b).

2. Ind.Code § 9–30–5–4.

3. In this plea agreement, Newkirk also pled guilty to three of the offenses charged on November 10, 2006. This appeal does not concern his conviction of or sentences for those offenses.

FIFTEEN (15) YEARS." (Appellants App. at 57) (capitalization in original).

At the sentencing hearing, the trial court heard testimony from Newkirk, his friends and family, the surviving motorcyclists, and family members of the deceased motorcyclists. The trial court found as aggravators Newkirk's risk of reoffending and the "particular circumstances of the crimes," that being "the egregious magnitude of the harm caused by defendant and the violent and horrific manner of killing three persons and maiming two other persons." (*Id.* at 15.) The trial court found no significant mitigators. The trial court declined to give Newkirk's lack of criminal history significant mitigating weight because it believed "this factor has been addressed by the terms of the plea agreement which limit the executed sentences to a total of fifteen years when his exposure was much greater." (*Id.*) In addition, Newkirk admitted to using drugs since he was sixteen;[4] therefore Newkirk "cannot be said to have lived a law-abiding life." (*Id.* at 16.) The trial court also declined to give significant mitigating weight to his guilty plea because there was "substantial evidence of guilt," he received a significant benefit from his plea, and he failed to demonstrate remorse and acceptance of responsibility in that he committed new offenses and refused to name his source of drugs. (*Id.*)

For each of the Class B felonies, the trial court imposed a five-year executed sentence and a twelve-year suspended sentence, with five years to be served on home detention. These sentences were to be served consecutively to each other, but concurrently with a three-year sentence for each of the Class D felonies. Therefore, Newkirk's aggregate sentence is fifty-one years: fifteen years executed and thirty-six years suspended, with fifteen years on home detention. For each offense, the trial court fined Newkirk $5,000 and suspended his license for five years. The trial court also ordered Newkirk to pay $245,900 in restitution to the Belchers for their medical expenses and lost wages.

## DISCUSSION AND DECISION

Newkirk raises three issues, which we reorder and restate as: (1) whether the plea agreement authorized the trial court to place Newkirk on home detention as a condition of probation; (2) whether the fifteen-year term of home detention violates Article 1, §§ 16 or 18 of the Indiana Constitution; and (3) whether Newkirks sentence is inappropriate in light of his character and the nature of his offenses.

### 1. *Plea Agreement*

■ Newkirk argues his plea agreement did not authorize the trial court to place him on home detention as a condition of probation. He relies on *Freije v. State*, 709 N.E.2d 323 (Ind.1999). Freije pled guilty to arson, and his plea agreement contained two provisions concerning his sentence:

3. The Defendant shall receive sentence of 2190 days at the Indiana Department of Correction with 2188 days suspended and credit for 1 day actually served and the balance of the time to be suspended.

4. The Defendant shall be placed on probation for a period of 2188 days of which the first 365 days must be monitored by the Hendricks County Superior Courts Probation department. Thereafter, the Defendant may petition the Court to request a transfer of the probation to another county.

---

4. Newkirk was twenty-four years old at the time of the accident.

*Id.* at 324. The trial court accepted the plea, but included two years of home detention and 650 hours of community service as conditions of probation.

Freije argued these conditions were material variances from the plea agreement, and our Supreme Court agreed.

> [T]hose conditions that do materially add to the punitive obligation, such as the home detention and 650 hours of community service in this case, may not be imposed in the absence of a plea agreement provision giving the trial court discretion to impose conditions of probation.

*Id.* at 325–26. The Supreme Court distinguished *Antcliff v. State*, 688 N.E.2d 166 (Ind.Ct.App.1997), which sustained home detention as a condition of probation because Antcliff's plea agreement specifically provided that the trial court had discretion to establish the conditions of probation.

Newkirk's plea agreement addressed sentencing in one paragraph: "SENTENCING LEFT TO THE SOLE DISCRETION OF THE COURT, WITH THE PARTIES AGREEING TO AN INITIAL EXECUTED JAIL COMMITMENT OF FIFTEEN (15) YEARS." (Appellant's App. at 57.) Unlike Freije's plea agreement, which called for a fixed sentence, Newkirk's plea agreement explicitly committed sentencing to the discretion of the trial court. The only limitation on that discretion was the amount of executed time.[5] Therefore, we conclude the trial court had discretion to place Newkirk on home detention. *See Chism v. State,*

807 N.E.2d 798, 799, 800 n. 2 (Ind.Ct.App. 2004) (noting in *dictum* that *Freije* did not prohibit the trial court from placing Chism on home detention where his plea agreement called for a cap on executed time and provided, "In all other respects the matter of sentence shall be determined by the Court"); *cf. Tubbs v. State,* 888 N.E.2d 814, 817 (Ind.Ct.App.2008) (where plea agreement generally left sentencing to trial courts discretion, but specified certain conditions of probation, trial court could not place Tubbs on home detention because that was not a specified condition).

## 2. *Art. 1, §§ 16 and 18*

■ Newkirk argues the order that he be placed on home detention for fifteen years as a condition of probation violates Art. 1, §§ 16 and 18 of the Indiana Constitution.

■ Art. 1, § 16 provides, "Cruel and unusual punishments shall not be inflicted. All penalties shall be proportioned to the nature of the offense." The nature and extent of penal sanctions is primarily a legislative consideration, and our review of these sanctions is highly restrained and very deferential. *Lindsey v. State,* 877 N.E.2d 190, 196–97 (Ind.Ct.App.2007), *trans. denied* 891 N.E.2d 39 (Ind.2008). We will not disturb the General Assembly's determination of the appropriate penalty absent a showing of clear constitutional infirmity. *Id.* at 197.

A criminal penalty violates the proportionality clause "only when a criminal

---

**5.** We note defense counsel's argument at the sentencing hearing suggests she understood the plea agreement to authorize the trial court to place Newkirk on home detention:

> If the Court were to impose any house arrest, which ... would not be a bad thing to do, I think Court[s] often want to make sure that they have a bit of a handle on people when they get out. I would ask the

Court to consider a minimum amount of house arrest, because any money that would go to pay house arrest would be much better spent to go to pay the restitution in this case, so that people are made whole from the financial burden and damages.

(Tr. at 138.)

penalty is not graduated and proportioned to the nature of the offense." "Stated differently, a legislatively determined penalty will be deemed unconstitutional by reason of its length only if it is 'so severe and entirely out of proportion to the gravity of the offense committed as to shock public sentiment and violate the judgment of reasonable people.' "

*Id.* (citations omitted).

In addition to the requirement of proportionality, article 1, section 16 provides, "Cruel and unusual punishments shall not be inflicted." It has been held that article 1, section 16 "does not entitle a person convicted of a crime in Indiana to any identifiable right to assignment to a particular institution." Rather, "[t]he constitutional prohibition against cruel and unusual punishments proscribes atrocious or obsolete punishments and is aimed at the kind and form of the punishment, rather than the duration or amount." Punishment is considered cruel and unusual if it " 'makes no measurable contribution to acceptable goals of punishment, but rather constitutes only purposeless and needless imposition of pain and suffering.' "

*Id.* at 197–98 (citations omitted).

Newkirk acknowledges fifteen years of home detention is not a cruel punishment, but argues it is "unusual in its length." (Appellants Br. at 17.) However, the prohibition of cruel and unusual punishments "proscribes atrocious or obsolete punishments" and is not directed to the "duration or amount." *Lindsey,* 877 N.E.2d at 198. Furthermore, the term of home detention contributes to acceptable goals of punishment. At the sentencing hearing, Newkirk testified he was "severely addicted" to methamphetamine, (Tr. at 36), and began using methamphetamine immediately after bonding out of jail on October 2, 2006.

Newkirk admitted he had used drugs since he was sixteen and his drug problem had been "out of control" since 2005. (*Id.* at 32.) Approximately a month after the accident and while he was out on bond, Newkirk was again caught driving with methamphetamine in his system. Newkirk's bald assertion that "a year or two" on home detention would be sufficient to ensure he does not return to his drug addiction, (Appellant's Br. at 17), does not persuade us that the fifteen-year term of home detention is unusual or disproportionate.

Art. 1, § 18 provides, "The penal code shall be founded on the principles of reformation, and not of vindictive justice." This provision "applies to the penal code as a whole and does not protect fact-specific challenges." *Ratliff v. Cohn,* 693 N.E.2d 530, 542 (Ind.1998) (emphasis in original).

Ratliff, a juvenile who pled guilty to arson and two counts of reckless homicide, argued her placement in the Indiana Women's Prison, rather than a juvenile detention center, violated Art. 1, § 18. Our Supreme Court disagreed, holding that particularized, individual applications of the penal code are not reviewable under Art. 1, § 18. *Ratliff,* 693 N.E.2d at 542. Just as Ratliff could not challenge her placement to a particular facility under Art. 1, § 18, Newkirk may not challenge his placement on home detention under that provision. His challenge under Art. 1, § 18 fails because he challenges the length of his home detention rather than the penal code as a whole. *See Ratliff,* 693 N.E.2d at 542.

### 3. *Appropriateness of Sentence*

■■ Newkirk argues his sentence is inappropriate. We may revise a sentence if it is "inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). We

give deference to the trial court's decision, recognizing its special expertise in making sentencing decisions. *Barber v. State*, 863 N.E.2d 1199, 1208 (Ind.Ct.App.2007), *trans. denied* 878 N.E.2d 208 (Ind.2007). The defendant bears the burden of persuading us the sentence is inappropriate. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind.Ct.App.2007).

The nature of the offense was horrific. According to the surviving motorcyclists, Newkirk was staring forward blankly and ran into the line of motorcycles without braking or making any evasive moves. Bird's leg was torn off. He remained conscious after the accident, was in pain, and died later that night. Brooksby and Shipley were drug underneath the engine of Newkirk's car. When Jack Aidukes went to help them, all he could see was "a big knot of flesh and blood;" the only thing he could recognize was Brooksby's face. (Tr. at 129.) Brooksby and Shipley died at the scene. The Belchers landed "just inches apart, but they didnt know where each other were and they had to be comforted to know that the other was alright." (*Id.* at 65.) They were unable to see each other for several days while they were hospitalized. Donna Belcher lost her foot and now has a limp, and Bill has permanent scars. Bill Belcher nearly died from blood clots that were going to his lungs. Dawn Belcher, the Belcher's daughter, testified they were "almost unrecognizable." (*Id.* at 111.) Dawn gave up her job to take care of her parents, who needed her to feed them, bathe them, dress their wounds, and take them to the doctor.

Dawn testified Donna cried every night in pain. The Belchers lost approximately $40,000 in wages and incurred $204,000 in medical bills. Newkirk killed three people, maimed two, and barely missed hitting another. He inflicted intense pain and suffering and did not even assist his victims by calling for help.

Newkirk compares his character to that of the defendant in *Rodriguez v. State*, 785 N.E.2d 1169 (Ind.Ct.App.2003). Rodriguez pled guilty to operating while intoxicated causing death as a Class C felony. The trial court found as aggravators Rodriguez's extremely high blood alcohol content, the loss to the victim's family, and the imposition of a reduced sentence would depreciate the seriousness of the offense. As mitigators, the trial court found Rodriguez was remorseful, had accepted responsibility, had no criminal history, and had been steadily employed. The trial court imposed the maximum sentence of eight years; however, we reduced his sentence because two of the three aggravators were improper.

*Rodriguez* is distinguishable. First, the trial court found Newkirk was not remorseful and had not accepted responsibility. The trial courts reasons for this finding were that: (1) there was overwhelming evidence of guilt [6] and Newkirk received a significant benefit by pleading guilty, and therefore, Newkirk's plea was pragmatic; (2) Newkirk reoffended while out on bond; and (3) Newkirk has not assisted with further investigation by naming his source of drugs. Second, although Newkirk has no criminal record, the trial court found

---

**6.** Newkirk argues the State did not have overwhelming evidence, noting weaknesses in the toxicology report. Blood, serum, and urine samples were collected from Newkirk. Although there appeared to be some question about the accuracy of the testing of the blood and serum, the report concluded "beyond a reasonable doubt" there was methamphet-amine in the serum. The report also unequivocally found methamphetamine in the urine. In addition, Newkirk's admissions and his driving behavior—turning directly into oncoming traffic for no apparent reason and making no attempt to avoid hitting the motorcycles—would support a finding that he had controlled substances in his body.

that was "diluted by the fact that … Mr. Newkirk has been a recurrent drug user. That's not a law abiding life." (Tr. at 149.)

We agree with the trial court that there are no significant mitigators in this case. Therefore, in light of the horrific nature of the offenses and Newkirks demonstrated likelihood to reoffend, we cannot say his sentence is inappropriate.

Affirmed.

ROBB, J., and NAJAM, J., concur.