**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Oct 18 2013, 5:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**EDWARD A. MCGLONE**
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARTIN CENFETELLI, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A01-1303-CR-118 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Michael Rader, Judge
Cause No. 84D05-1208-FB-2639

**October 18, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Martin Cenfetelli appeals his sentence for Class B felony operating a vehicle with a blood alcohol content ("BAC") of .15 or more causing death. We affirm in part, reverse in part, and remand.

## Issues

Cenfetelli raises three issues, which we consolidate and restate as:

> I.  whether he waived his argument that his sentence is inappropriate in light of the nature of the offense and the character of the offender; and
>
> II. whether the trial court abided by the terms of the plea agreement when it sentenced Cenfetelli.

## Facts

On August 8, 2012, Cenfetelli ran a red light at an intersection and hit twenty-two-year-old Jesse Hoke and his motorcycle, causing Hoke's death. Cenfetelli was driving between eighty and ninety miles an hour despite the posted speed limit of thirty miles per hour. Cenfetelli abandoned his vehicle two blocks away and fled the scene on foot. The police found Cenfetelli at home and arrested him. A blood draw revealed that Cenfetelli had a BAC of .192.

The State charged Cenfetelli with Class B felony operating a vehicle with a BAC of .15 or more causing death, Class C felony failure to stop after an accident resulting in death, Class A misdemeanor operating a vehicle with a BAC of .15 or more, and Class A misdemeanor operating a vehicle while intoxicated endangering a person. Cenfetelli and the State entered into a plea agreement that provided:

1. The defendant agrees and shall plead to Count I, Operating a Vehicle with a Blood Alcohol Content of .15 or More Causing Death, a Class B felony. The Defendant shall receive a sentence with a cap of 14 years which shall be determined by the Court after evidence and argument of counsel.

2. The defendant agrees to pay Restitution to be determined by Adult Probation and victims shall have the right to speak and make sentence recommendation.

* * * * *

5. If the Defendant fails to qualify for, or is rejected from Community Corrections for any reason or at any time, the Defendant shall serve the remaining balance on Community Corrections at the Department of Correction.

6. Other terms of this agreement are as follows:

   a. Breath tests and/or random urinalyses to be administered through any Alcohol and Drug counseling Program, any Community Correction Program, and/or the Adult Probation Department.

   b. The Defendant waives his/her right, Constitutional Rights as to his/her person, vehicle and/or residence. . . . .

   c. The Defendant further agrees any contraband or evidence of other criminal activity may be introduced against him/her at a Probation Revocation hearing or hearing to revoke direct placement or criminal prosecution.

7. The Defendant waives his/her right to appeal his/her sentence so long as the Court follows this agreement and abides by the terms and conditions set within this agreement.

8. A fine of $1.00, court costs of $170.50 and $200.00 countermeasure fee, all payable within 90 days of the sentencing date.

Appellant's App. pp. 18-19.

At the guilty plea hearing, the trial court indicated that it was "not willing to accept the fine of a dollar . . . ." Tr. p. 3. Rather, the trial court wanted "that left open to the discretion of the court . . . ." Id. The trial court gave Cenfetelli an opportunity to discuss the matter with his attorney, and Cenfetelli and his attorney indicated that the modification was "fine." Id. at 4. Cenfetelli indicated that he understood the modification. Id. at 5. The trial court then advised Cenfetelli of the rights he was giving up by pleading guilty and also said, "And you have the right to appeal any judgment of this court. Do you understand all of these rights?" Id. at 7. Cenfetelli indicated that he understood. After further advisements, Cenfetelli pled guilty, and the trial court accepted his plea.

The trial court then proceeded with the sentencing portion of the hearing. The trial court found the substantial harm to victim and his family and friends and Cenfetelli's criminal history as aggravators. The trial court found Cenfetelli's guilty plea and remorse to be mitigators. The trial court sentenced Cenfetelli to fourteen years in the Department of Correction with ten years executed in the Department of Correction, one year executed in a work release program, and three years of probation. As conditions of probation, the trial court ordered Cenfetelli to serve one year of home detention, perform 400 hours of community service, give five presentations to community organizations regarding his experience, and avoid drugs, alcohol, and places where alcohol is served. The trial court

4

suspended Cenfetelli's driver's license for five years, fined him $2,000, and ordered him to pay restitution of $101,198.24. At the end of the sentencing hearing, the trial court stated, "You also have a right to appeal. If you wish to appeal, you should notify this court. You have thirty (30) days in which to file your notice of appeal. . . ." Tr. pp. 96-97. Cenfetelli now appeals.

## Analysis

### I. Inappropriate Sentence

Cenfetelli argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender. However, the State argues that Cenfetelli waived this argument because the plea agreement here provided: "The Defendant waives his/her right to appeal his/her sentence so long as the Court follows this agreement and abides by the terms and conditions set within this agreement." Appellant's App. p. 19. According to the State, Cenfetelli waived his appropriateness argument but is still allowed to present arguments that the trial court did not abide by the plea agreement. Cenfetelli claims that the waiver provision in the plea agreement is overcome by the trial court's oral advisements at the guilty plea hearing and at the end of the sentencing hearing that Cenfetelli had the right to appeal.

We need not resolve the waiver argument because we conclude that, even if Cenfetelli did not waive his right to challenge his sentence under Appellate Rule 7(B), his sentence is not inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence

5

is inappropriate in light of the nature of the offense and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. Id. We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

The nature of the offense is that Cenfetelli, while extremely intoxicated and driving at a high rate of speed, hit Hoke and his motorcycle, causing Hoke's death. Cenfetelli then fled the scene of the accident and went home. A review of the character of the offender reveals that, although Cenfetelli pled guilty and was remorseful, he also

6

has a criminal history that does not speak well of his character. His criminal history includes juvenile adjudications for criminal mischief on two occasions and battery resulting in bodily injury on two occasions, and numerous other arrests that did not result in formal charges, including arrests for theft, possession of marijuana, possession of paraphernalia, disorderly conduct, cruelty to animals, criminal mischief, and runaway. As an adult, he has convictions for Class B misdemeanor public intoxication and Class B misdemeanor criminal mischief and entered into a deferral agreement on a domestic battery charge. Cenfetelli requests that we revise his sentence to ten years, but given the circumstances of the offense and Cenfetelli's criminal history, we conclude that the fourteen-year sentence is not inappropriate in light of the nature of the offense and the character of the offender.

## II. Consistency with the Plea Agreement

The remaining arguments concern whether the trial court sentenced Cenfetelli in accordance with the plea agreement. The trial court's discretion is limited where the sentence is imposed pursuant to a plea agreement. Bennett v. State, 802 N.E.2d 919, 921 (Ind. 2004). A plea agreement is contractual in nature, binding the defendant, the State, and the trial court. Id. "It is within the trial court's discretion to accept or reject a plea agreement and the sentencing provisions therein; however, if the court accepts such an agreement, it is strictly bound by its sentencing provision and is precluded from imposing any sentence other than required by the plea agreement." Id. at 921-22.

### A. Fine

First, Cenfetelli argues that the trial court erred by imposing a $2,000 fine. According to Cenfetelli, the plea agreement allowed only a one dollar fine, and he was coerced by the trial court into allowing a higher fine. The trial court here indicated that it would not accept the guilty plea as it was written with a fine of $1. Rather, the trial court wanted discretion to impose any fine within the statutory limitations. Cenfetelli and his attorney agreed to that modification of the plea agreement.

Cenfetelli cites no authority that would render the oral modification erroneous. Cenfetelli argues that he did not freely and voluntarily agree to the modification. However, during the guilty plea hearing, the trial court indicated that it was "not willing to accept the fine of a dollar . . . ." Tr. p. 3. Rather, the trial court wanted "that left open to the discretion of the court . . . ." Id. The trial court gave Cenfetelli an opportunity to discuss the matter with his attorney, and Cenfetelli and his attorney indicated that the modification was "fine." Id. at 4. Cenfetelli indicated that he understood the modification and that the fine would "be left open to the Court." Id. at 4-5. Cenfetelli also indicated that he understood the range of the fine was zero to $10,000. Id. at 7.

Moreover, this seems to be a claim that his guilty plea was not knowingly, intelligently, or voluntarily entered, and such claims must be presented through post-conviction proceedings. See Tumulty v. State, 666 N.E.2d 394, 395 (Ind. 1996). He also argues that he was not advised of the maximum statutory fine prior to the oral agreement. However, before he pled guilty and the trial court accepted the plea, the trial court did advise him of the maximum fine. Consequently, his argument is unpersuasive. We conclude that the trial court did not abuse its discretion by imposing a $2,000 fine.

8

### B. Conditions of Probation

Next, Cenfetelli argues that the trial court erred by imposing certain conditions of probation. Specifically, Cenfetelli challenges the home detention and community service terms of probation. According to Cenfetelli, the plea agreement mentioned some conditions of probation, but it did not mention home detention or community service. Thus, Cenfetelli argues, the trial court's imposition of home detention and community service as a condition of probation violated the plea agreement's provisions.

In Freije v. State, 709 N.E.2d 323 (Ind. 1999), our supreme court addressed a similar argument regarding the conditions of probation in a guilty plea case. There, the defendant entered into a plea agreement that provided for a specific sentence, which included probation, but the plea agreement did not mention any conditions of probation or give the trial court discretion regarding the conditions of probation. The trial court imposed home detention and 650 hours of community service as conditions of probation.

On appeal, our supreme court noted that, when the trial court establishes terms of probation following the acceptance of a plea agreement, a trial court's discretion is limited. Freije, 709 N.E.2d at 324. Trial courts are free to impose "administrative or ministerial conditions" as terms of probation, even if such terms are not included in the plea agreement. Id. at 325. However, "those conditions that do materially add to the punitive obligation, such as the home detention and 650 hours of community service in this case, may not be imposed in the absence of a plea agreement provision giving the trial court discretion to impose conditions of probation." Id. at 325-26. The court held

that the trial court erred by including home detention and community service as conditions of the defendant's probation.

We also addressed the conditions of probation in a guilty plea setting in Newkirk v. State, 898 N.E.2d 473 (Ind. Ct. App. 2008), trans. denied. There, the defendant pled guilty pursuant to a plea agreement that left sentencing to the sole discretion of the trial court with the parties "agreeing to an initial executed jail commitment of fifteen (15) years." Newkirk, 898 N.E.2d at 475-76. The trial court sentenced the defendant to fifty-one years with fifteen years executed, thirty-six years suspended, and fifteen years on home detention. On appeal, the defendant argued that the plea agreement did not authorize the trial court to place him on home detention as a condition of probation. We noted that the plea agreement explicitly committed sentencing to the discretion of the trial court and concluded that the trial court had discretion to place the defendant on home detention.

Here, the plea agreement capped the executed sentence at fourteen years and included two conditions of probation—random breath tests and urinalyses and random searches.[1] Other than the provisions of paragraph 6, the plea agreement was silent regarding whether the trial court had discretion to impose other punitive conditions of probation. We conclude that this case is similar to Tubbs v. State, 888 N.E.2d 814 (Ind. Ct. App. 2008). There, the plea agreement provided: "[T]he court may impose whatever sentences it deems appropriate except said sentences shall be served concurrently with

_____

[1] The State argues that Paragraph 6 does not directly address the available terms of probation, but it clearly concerns random breath tests and urinalyses and random searches during probation. Thus, we find the State's argument unpersuasive.

10

each other and the executed portion, if any, shall not exceed nine years.  Both sides may argue sentencing."  Tubbs, 888 N.E.2d at 817.  However, the agreement also provided: "[A]s a condition for any suspended sentence or probation, the defendant shall testify truthfully if called upon to do so."  Id.  We concluded that "the specific paragraph addressing the only imposed condition for probation or suspended sentence is at odds with any implied broad grant of discretion concerning the terms of probation in paragraph 2's assertion that the court might impose whatever sentences it deemed appropriate."  Id.  As such, we concluded that the specific paragraph dealing with conditions of probation controlled.  We determined that the plea agreement did not afford the trial court broad discretion in fixing the terms of probation, and the imposition of community corrections as a condition of probation was an "additional substantial obligation of a punitive nature not authorized by the plea agreement."  Id.

As in Tubbs, because the plea agreement here contained certain conditions of probation and did not give the trial court discretion to impose additional conditions of probation of a punitive nature, we conclude that the trial court here erred by imposing home detention and community service as conditions of probation.  We reverse the trial court's imposition of home detention and community service as conditions of probation.

### *C. Restitution*

Cenfetelli also argues that the trial court erred by imposing a restitution award of $101,198.24.  It is unclear how the trial court calculated the amount of $101,198.24, but according to Cenfetelli, that amount appears to include $75,500 needed to complete a house that Hoke was building and possibly a payoff amount on Hoke's loan regarding the

11

house.  Cenfetelli argues that it was improper to include these amounts in the restitution.

The State concedes that we must remand the restitution order because the plea agreement

required the probation department, not the trial court, to calculate the restitution.

Accordingly, we reverse the restitution order and remand to the trial court for

proceedings consistent with this opinion. [2]

### D.  Driver's License

Finally, Cenfetelli argues that the plea agreement did not allow the trial court to

impose a five-year suspension of his driver's license.  Indiana Code Section 9-30-5-10(a)

provides:

> In addition to a criminal penalty imposed for an offense under
> this chapter, IC 35-46-9, or IC 14-15-8 (before its repeal), the
> court shall, after reviewing the person's bureau driving record
> and other relevant evidence, recommend the suspension of the
> person's driving privileges for the fixed period of time
> specified under this section.  The court may require that a

---

[2] On remand, we remind the trial court that, pursuant to Indiana Code Section 35-50-5-3, a restitution
order must be based on a consideration of:

(1)    property damages of the victim incurred as a result of the crime,
       based on the actual cost of repair (or replacement if repair is
       inappropriate);

(2)    medical and hospital costs incurred by the victim (before the date
       of sentencing) as a result of the crime;

(3)    the cost of medical laboratory tests to determine if the crime has
       caused the victim to contract a disease or other medical
       condition;

(4)    earnings lost by the victim (before the date of sentencing) as a
       result of the crime including earnings lost while the victim was
       hospitalized or participating in the investigation or trial of the
       crime; and

(5)    funeral, burial, or cremation costs incurred by the family or
       estate of a homicide victim as a result of the crime.

period of suspension recommended under this section be imposed, if applicable, before a period of incarceration or after a period of incarceration, or both before and after a period of incarceration, as long as the suspension otherwise complies with the periods established in this section.

As a result of Cenfetelli's conviction for Class B felony operating a vehicle with a BAC of .15 or more causing death, the trial court "shall recommend the suspension of the person's driving privileges for at least two (2) years but not more than five (5) years." Ind. Code § 9-30-5-10(e). The BMV is required to "fix the period of suspension in accordance with the recommendation of the court under this section and in accordance with IC 9-30-6-9." I.C. § 9-30-5-10(g).[3] "If the court fails to recommend a fixed period of suspension," the statute requires the BMV to "impose the minimum period of suspension required under this section." Id.

The relevant statutes required the trial court to impose a suspension of Cenfetelli's driving privileges. The plea agreement was silent on the length of the suspension. We note, however, that suspension of driving privileges is mandatory and is not an "additional penalty." In In re G.B., 709 N.E.2d 352, 355 (Ind. Ct. App. 1999), we held that placement on the sex offender registry was mandatory and was not required to be included within a plea agreement's sentencing terms. Similarly, here, we conclude that the suspension of Cenfetelli's driver's license was mandatory and was not required to be included in the plea agreement's sentencing terms. The plea agreement's only constraint on the sentence was that it be capped at fourteen years. Thus, without a specific

---

[3] Indiana Code Section 9-30-5-10 was amended by Pub. L. No. 85-2013, Sec. 90 (eff. July 1, 2013), but the changes do not affect the outcome here.

provision in the plea agreement addressing the suspension, the trial court was within its discretion to impose a five-year suspension.

## Conclusion

The fourteen-year sentence is not inappropriate in light of the nature of the offense and the character of the offender. Further, the fine and driver's license suspension are proper under the plea agreement. However, the trial court erred by imposing community service and home detention as conditions of probation, and the State concedes that the restitution order is erroneous. Accordingly, we affirm the fourteen-year sentence, the fine, and the driver's license suspension. We reverse the home detention and community service as conditions of probation and the restitution order, and we remand for proceedings regarding the restitution order.

Affirmed in part, reversed in part, and remanded.

CRONE, J., and PYLE, J., concur.